UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) )  ) No. 04-10345-NMG ) |
| v. | ) ) ) |
| MOHAMMED ABDUL RASHEED QUARAISHI | ) |

## DEFENDANT MOHAMED ABDUL RASHEED QUARAISHI'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO VACATE SEIZURE WARRANT AND/OR HOLD AN EVIDENTIARY HEARING

### I.   INTRODUCTION

Defendant Mohammed Abdul Rasheed Quaraishi ("Rasheed") hereby submits this Reply to the Government's Opposition to Motion to Vacate Seizure Warrant and/or Hold an Evidentiary Hearing ("Opposition"). Rasheed has moved on grounds including Fifth and Sixth Amendment rights and related case law, that this Court vacate the Seizure Warrant encompassing the monies as issue. Rasheed's right to these monies should be decided here, in the criminal action, where it was initially raised. In this respect, Rasheed has (1) shown more than adequate standing to exercise control over the accounts; (2) has demonstrated the need to use those funds for purposes of defending himself in this action; and (3) has met his burden of production as to the Government's lack of probable cause (*i.e.* the record conclusively shows that *none* of the monies seized derived from anything *but* legitimate sources). Accordingly, and as will be demonstrated below, Rasheed's motion should be granted.

## II. ARGUMENT

### A. This Issue Should Be Resolved Here in the Criminal Action as Opposed to in the Recent Civil Action

The Government argues that, now that it has filed a Verified Complaint for Forfeiture in Rem ("Complaint"), the appropriate venue for Rasheed's motion is the civil action. While the Government cites two cases and various statutory provisions, none supports the Government's position that Rasheed's claim to the monies should be resolved in the civil action, United States v. $103,342.22 in U.S. currency, *et al.* Rather, it would be more appropriate for the pretrial seizure of the funds to be determined by this Court (Magistrate Judge Swartwood) in the criminal action. Rasheed is a defendant in the criminal matter, and has earmarked those funds for his defense of these charges. The Indictment was filed here only seventeen days after this Court (Magistrate Judge Swartwood) issued the Seizure Warrant. Counsel for Rasheed has been in discussion with the Government for the release of those funds since immediately after the Indictment was handed down – prior to the filing of the Complaint in the civil action (or any discussions about such a Complaint). The Government did not serve Rasheed with a copy of that Complaint until after he filed his Motion to Vacate Seizure Order.

In sum, by filing the Complaint in the civil action, the Government seeks to preclude *this* Court (Magistrate Judge Swartwood) from ruling upon Rasheed's claims to a Constitutional right to use the seized funds for defending himself in this action. Rasheed has, accordingly, filed a Motion to Dismiss or, Alternatively, Stay the Civil Action based on the insufficiency of the Complaint (as discussed below) and the fact that the pretrial release of the funds should be decided by this Court (Magistrate Judge Swartwood).

### B.  Rasheed Has Shown More Than Adequate Standing to Exercise Control Over the Accounts

The Government also argues that Rasheed has failed to demonstrate standing to contest the seizure of the funds from his corporate account. While acknowledging that Rasheed has, in fact, exercised control over his corporate account, the Government nonetheless argues that Rasheed has failed to aver sufficient facts to demonstrate his "actual and legal authority" to exercise control over his corporate account. Further, the Government argues that where MAQ may have credit liabilities Rasheed cannot use those funds for his personal legal defense. In terms of "actual and legal authority" to exercise control, Rasheed is not only the sole principal of MAQ but his name actually appears on the account. The fact that his name is on the account combined with the fact that he actually exercises control over the account is sufficient in and of itself to establish standing to contest seizure. *See United States v. U.S. Currency*, 189 F.3d 28 (1st Cir. 1999) (holding that joint account holder who exercised dominion and control over account had standing to contest forfeiture). Moreover, in terms of using those funds for his personal defense, it is common practice for companies to indemnify (*i.e.* advance fees and costs of defense) to certain employees, including officers, such as Rasheed.[1]

### C.  Rasheed Has Demonstrated the Need to Use the Funds for Purposes of Defending Himself in this Action

In addition, the Government argues that Rasheed has not demonstrated the need to use the seized funds for purposes of defense fees and costs. Specifically, the Government argues that Rasheed has access to other similarly-situated corporate funds, that he does not show his assets or balance sheets, that he does not include family resources in his

---

[1] The Government also states that it has obtained evidence that Rasheed's brother, Qaiyum, "managed numerous financial transactions" for MAQ. However, the Government fails to cite to that evidence, and also fails to explain how that would impact Rasheed's standing to contest the forfeiture.

3

affidavit, and that he does not establish his ability to assign his rights to counsel prior to a final adjudication of forfeitability.

With respect to Rasheed's new corporate account, the Government is incongruously arguing *both* that it is inappropriate for Rasheed to use corporate funds for his personal defense fees and costs *and* that he does not have a need to use the seized corporate funds because (the Government presumes) he can use other corporate funds. Regardless, Rasheed's affidavit states that the account is not sufficient as it is to cover his current business expenses; the bank records submitted in support of his Motion to Vacate establish show that the predecessor account to this account was likewise often insufficient to meet current business needs – necessitating Rasheed to acquire loans, from himself and others, to meet payroll. Likewise, the Government fails to cite any case law or other authority stating that Rasheed must, in addition to submitting an affidavit and bank records, show some sort of balance sheet for his company or that he must turn to his brothers, sisters, and parents (especially where his brothers are similarly being forced to defend themselves against criminal charges.) As far as being able to assign the seized funds to his attorneys prior to a final adjudication, that is the very nature of the Constitutional right Rasheed asserts here.

### D.     Rasheed Has Met His Burden of Production on Probable Cause

Finally, the Government argues that Rasheed has not met his burden of production on probable cause as to seizure of the funds. First, the Government has confused the "accounts" with the "funds" in the accounts. While the Government clearly identifies the "contents" of the accounts as the "property" subject to seizure (*see* Aff. of Special Agent Richard M. Deasy, ¶ 3), the Government nonetheless goes on to treat the

"accounts" as the "property" at issue. The Government provides no support for this argument for the simple reason that none exists: This is contrary to both the plain language of the governing statue (18 U.S.C. § 984) and all related case law.

By confusing *accounts* with *funds* seized within the accounts, the Government is attempting to make an end-run around 18 U.S.C. § 984. Section 984 specifically provides:

> In any forfeiture action in rem in which the *subject property* is . . . *funds* deposited in an account in a financial institution . . . (A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and (B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.

18 U.S.C. § 984(a)(1) (emphasis supplied). Section 984 further provides that "any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture . . . ." *Id.* at § 984(a)(2). However, § 984 limits the Government's ability to forfeit such property by providing that "[n]o action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense." *Id.* at § 984(b). Thus, the only way funds that are not directly traceable to the offense are forfeitable is if they replaced funds in an account that were traceable to the offense and the forfeiture action is commenced within one year of that offense.[2]

---

[2] The Government attempts to argue in its Opposition that the business-related funds (as opposed to the funds that were allegedly received for unlawfully obtaining visas) deposited into Rasheed's corporate account were themselves somehow derived from visa fraud. This is the first time, to Rasheed's knowledge, that the Government has posited this theory, and, as can be seen on this record, it is completely unsupported by the Government's "seizure" affidavit.

5

Second, the Government fails to allege any conduct that would now allow it to seize the funds pursuant to 18 U.S.C. § 984. As a general rule, forfeitures are not favored by law and, as such, statutes providing for forfeitures are strictly construed against forfeiture and in favor of the person whose rights are affected. *See United States v. $39,480.00 in United States Currency*, 190 F. Supp.2d 929, 931-932 (W.D. Texas 2002); *United States v. Jenison*, 484 F. Supp. 747, 752 (D. R.I. 1980). In its Opposition, the Government alleges that funds seized with the accounts on November 1, 2004 are forfeitable because they were the proceeds of violations of 8 U.S.C. § 1324(a)(1)(A)(iv), and that they were then, in turn, laundered through Rasheed's personal and corporate accounts.[3]

The crime for which the Government has charged Rasheed is not specified unlawful activity under 18 U.S.C. § 1956. Section 1956(c)(7) does not list 8 U.S.C. § 1324(a)(1)(A)(iv) among the list of specified unlawful activity; rather, it only refers to "any act or activity constituting an offense listed in section 1961(1)." 18 U.S.C. § 1956(c)(7). But 18 U.S.C. § 1961(1) only lists "any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens) . . . if the act indictable under such section of such Act was committed for the purpose of financial gain . . . ." *See* 18 U.S.C. § 1961(1)(F). This would, in turn, refer to 18 U.S.C. § 1324(a)(1)(B)(i). However, the Government does not allege such a violation in the affidavit it submitted in support of the Seizure Warrant, and it has not charged Rasheed with such a violation in the Indictment. While the Government does allege that Rasheed violated 18 U.S.C. § 1546 in its affidavit, the Government has not

---

[3] As Rasheed's Motion to Vacate and supporting materials establish, *all of* the funds seized derive from legitimate sources. The Government has submitted *no* record evidence to the contrary.

6

charged Rasheed with such a crime and is not now alleging it as a basis for seizure. Thus, the Government has failed to adequately establish any money laundering activity.

Regardless, the Government's affidavit fails to allege Rasheed committed any elements of either 8 U.S.C. § 1324(a)(1)(A)(iv) or 18 U.S.C. § 1546 within the required one-year time frame from when the Government filed its Complaint. The Government filed its Complaint on March 18, 2005. However, the Government does not allege any elements of §§ 1324(a)(1)(A)(iv) or 1546 that occurred after March 18, 2004. While the Complaint and the Government's affidavit alleges that Rasheed transferred money from his personal account to his corporate account during the period of June 20, 2003 through May 14, 2004, it fails to adequately demonstrate that such activity was unlawful. The Government's allegation here is clearly insufficient in light of (1) the fact that, as established in Rasheed's affidavit and bank records, it is common practice for him to transfer money back and forth to his corporate account for completely legitimate purposes and (2) the Government fails to make any specific allegation about the funds that were transferred. Further, while the Complaint and the Government's affidavit list several alleged payments by the confidential informant to Rasheed, they fail to allege a single payment within the March 18, 2004 to March 18, 2005 time period.

Moreover, the Government cannot continue to hold the funds in anyway on a commingling theory. The First Circuit case the Government cites, *United States v. McGauley*, 279 F.3d 62 (1st Cir. 2002), is inapposite to our facts and thus of no help to the Government. *McGauley* held that the criminal forfeiture statute authorized "the forfeiture of legitimate funds that have been commingled with the proceeds of unlawful activity *for the purpose of* concealing those proceeds." 279 F.3d at 65 (emphasis

supplied). Here, the record conclusively shows that there are no "proceeds of unlawful activity" much less that Rasheed used the funds "for the purpose of" concealing proceeds of unlawful activity. The other case the Government cites, *United States v. Marabella*, 73 F.3d 1508 (9th Cir. 1996), addresses only the issue of whether a defendant substantively committed a violation of the money laundering statute; it does not address what "property", if any, was forfeitable.

### III.   CONCLUSION

For the foregoing reasons, this Court should vacate its Seizure Order, dated November 1, 2004; alternatively, this Court should direct that an evidentiary hearing be held on this matter.

> Respectfully submitted,
> MOHAMMED ABDUL RASHEED
> QUARAISHI
> By his attorneys,
>
>
> /s/ Frank A. Libby, Jr.
> Frank A. Libby, Jr. (BBO No. 299100)
> Nicholas A. Klinefeldt (BBO No. 647422)
> **KELLY, LIBBY & HOOPES, P.C.**
> 175 Federal Street
> Boston, MA 02110
> Telephone: (617) 338-9300

Dated: May 13, 2005